UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────

LATIF SHAMSUDDIN,

                              Petitioner,

        v.                                                9:20-CV-0955
                                                          (DNH)

BRANDON J. SMITH, Superintendent,
Greene Correctional Facility,

                              Respondent.

───────────────────────────────

APPEARANCES:                                OF COUNSEL:

LATIF SHAMSUDDIN
Petitioner, Pro Se
17-A-3697
Greene Correctional Facility
P.O. Box 975
Coxsackie, NY 12051

HON. LETITIA JAMES                          MARGARET A. CIEPRISZ, ESQ.
Attorney for Respondent                     Ass't Attorney General
New York State Attorney General
28 Liberty Street
New York, NY 10005

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. <u>INTRODUCTION</u>

        Pro se petitioner Latif Shamsuddin ("Shamsuddin" or "petitioner") seeks federal

habeas corpus relief pursuant to 28 U.S.C. § 2254.  Dkt. No. 1 ("Pet.").  Respondent ("Smith"

or "respondent") was directed to answer the petition, Dkt. No. 5, and thereafter filed an

opposition to petitioner's request for relief, Dkt. No. 9, Memorandum of Law in Opposition;

Dkt. No. 10, Answer; Dkt. No. 11, State Court Records. Petitioner has filed a traverse.[1] Dkt. No. 18. For the reasons that follow, Shamsuddin's habeas petition is denied and dismissed.

## II. RELEVANT BACKGROUND

In September 2016, Shamsuddin was charged in an indictment with burglary in the second degree after he entered a guest room at the Hilton Hotel in the City of Albany and stole a guitar. *People v. Shamsuddin*, 167 A.D.3d 1334 (2018).

### A. The People's Case

Shamsuddin's trial was held in May 2017. T. at 37.[2] The People relied on the testimony of several witnesses including Mirnia Quinde, a housekeeper for the Hilton Hotel. *Id*. at 342-343. Quinde testified that while she was cleaning the bathroom in Room 410 on August 15, 2016, at approximately 3:45 p.m., Shamsuddin entered the room and claimed to be a guest in the room. *Id*. at 344-346. Shamsuddin told her he needed to use the bathroom. *Id*. at 346. Quinde left the room, went into the hall, and Shamsuddin closed the door. T. at 347. After two or three minutes, Shamsuddin exited the room with a guitar that Quinde recalled seeing in the room, wedged in the small space between the bed and the wall. *Id.* at 346-348. Quinde returned to the room to finish cleaning and noticed that the water in the toilet was not running. T. at 348. Later that day, as Quinde was cleaning another room, two men asked her "[w]here is the guitar?" *Id.* When Quinde responded, the

---

[1] Shamsuddin appears to assert new grounds for relief in his Traverse. For example, he argues, for the first time, the following: (1) he was not read his *Miranda* rights; (2) the prosecution withheld *Brady* material; and (3) his trial counsel was ineffective. Dkt. No. 18. These claims will not be considered because a traverse or reply is not the proper pleading in which to raise additional grounds for habeas relief. *Voymas v. Unger*, No. 10–CV–6045, 2011 WL 2670023, at *13 (W.D.N.Y. Jul. 7, 2011); *Jones v. Artus*, 615 F.Supp.2d 77, 85 (W.D.N.Y. 2009).

[2] "SR" refers to the state court record, found at Dkt. No. 11-1 and "T" refers to the transcript from court proceedings, found at Dkt. No. 11-2. Citations to the submissions refer to the pagination generated by CM/ECF, the Court's electronic filing system.

third man came and took it, the men replied, "[n]o, there wasn't a third person." *Id*. at 349.

Shana Callaghan, an employee at Modern Body Art, also testified for the prosecution. T. at 371. Callaghan was working in the shop on August 15, 2016 at approximately 4:00 p.m. when Shamsuddin came in and asked if anyone was a musician. *Id*. at 372-373. Callaghan noticed he was holding a guitar case with the word, "Gibson" on it and asked if he was interested in selling the guitar. *Id.* When Callaghan asked him how much he wanted, the man said "$45.00" and Callaghan bought the guitar. *Id*. Later that day, Callaghan wondered if the deal was "too good to be true" and took it to a friend at a guitar shop. T. at 373. The friend told her the guitar was worth, at least, $1500. *Id*. at 374. Callaghan went home and called the Albany Police Report and spoke with Detective Haggerty. *Id*.

Detective Haggerty testified that he received a call from Callaghan, who told him she purchased a guitar from a man for $45. T. at 446-447. Not long after, the Hilton reported a burglary and stolen guitar. *Id*. at 448. Haggerty asked Callaghan to bring the guitar to the police department. *Id*. at 449. The owner identified the guitar and it was returned to him. *Id*. at 450. As part of the investigation into the burglary, Haggerty asked another detective to conduct a video canvas. T. at 451. The detective returned with multiple videos that captured a suspect traveling, on foot, with the guitar. *Id*. Haggerty "pull[ed] still images from the video" and issued a crime bulletin. *Id*. at 452. As a result of the bulletin, Shamsuddin was taken into custody. *Id.* at 459-460. A redacted copy of the videotape of Haggerty's interview with Shamsuddin, which the parties stipulated to admit into evidence, was played for the jury.[3] T. at 276, 461-462.

---

[3] The record before this Court does not include the video or a transcript of the interview. *See* Dkt. No. 9 at 4, n.2.

**B.** <u>The Defense Case</u>

Shamsuddin testified that, on August 15, 2016, he was homeless, estranged from his wife, and smoked crack "over five times."  T. at 517, 525, 526.  Shamsuddin went to the Hilton Hotel that day to get a get a drink of water and use the bathroom.  *Id*. at 526.  Shamsuddin also hoped to "bump" into his wife, who worked for "HEAT; New York State" at 40 Lodge Street, the same address as the hotel.  *Id*. at 520, 526.  Because his wife worked at that location for 18 years, Shamsuddin had entered the Hilton Hotel "hundreds of times."  *Id*. at 520-521.

Shamsuddin testified that he entered the hotel, walked to the elevator and pushed the down button.  T. at 527.  However, when Shamsuddin entered the elevator, it went up instead of down.  *Id*. at 527.  When the elevator doors opened, Shamsuddin followed the crowd of people off of the elevator onto the fourth floor.  *Id*. at 527, 539.

Shamsuddin walked down a corridor and saw an open room.  T. at 528.  Shamsuddin asked the maid if he could use the bathroom and she agreed.  *Id*.  Shamsuddin did not recall telling the maid that Room 410 was his room.  *Id*. at 541.  The maid closed the door to the bathroom and Shamsuddin "handle[d] [his] business."  *Id*. at 528.  When Shamsuddin exited the bathroom, he saw the guitar and grabbed it.  T. at 541.  Shamsuddin testified that he "figured I could get some money for [the guitar] and I can keep running the streets and get high."  *Id*. at 529.  Shamsuddin sold the guitar in a tattoo shop.  *Id*. at 530.

Shamsuddin testified he was apprehended by Officer Babcock who, "tackled [him] from behind.  Actually, I hit the car then I hit the floor and he was on top of me."  T. at 531.  Shamsuddin did not recall complaining about "broken ribs" to the police during his interview.  *Id.* at 545.

**C.** **Summation and Verdict**

During summation, Shamsuddin's counsel told the jury that Shamsuddin sustained "three broken ribs" when he was "brought down" and advised that the judge would instruct them that "you are the determination [sic] as to whether or not a confession was innocent."  T. at 583.  Shamsuddin's counsel also stated, "[. . .] the maid, told you a description.  Now we all know she lied[,]" and told the jury that Callaghan "ma[de] up this elaborate, weird story[.]"  *Id*. at 583, 585, 589, 590.

During his summation, the prosecutor emphasized the lack of evidence supporting Shamsuddin's testimony that his wife worked anywhere near the Hilton.  T. at 593-594.  The prosecutor told the jury that "the defendant needs to have a reason to be in the Hilton, there is no reason for him to be in the Hilton" and stated, "[w]hy was he going into the Hilton?  It's because he was living on the street, he was smoking crack, he was looking for things to steal[.]"  *Id*. at 594.

The prosecutor also stated "[d]efense attorney wants to make this about credibility" and urged the jury to, "please, please make this about credibility."  *Id*. at 596.  The prosecutor asked the jury to consider what motive Quinde and Callaghan would have to lie and stated that Shamsuddin had "zero credibility."  *Id*. at 596-597, 600, 606.  The prosecutor also asked the jury to "consider why is it that the Albany Police Department records interviews[.]"  *Id*. at 600.  Counsel continued, "[b]ecause in, in the past, when interviews weren't recorded, there was this feeling that, like, why would someone admit to a crime, right?  Did the police beat it out of him?  Did they choke them?  Did they threaten them?"  T. at 600.

Petitioner's counsel repeatedly objected to the prosecutor's summation.  The trial court

overruled counsel's objections related to Shamsuddin's wife's employment and the prosecutor's characterization of the defense strategy (T. at 594, 596) and sustained the objections related to Quinde's "interest," references to police brutality, and characterizations of Shamsuddin's credibility.  T. at 597, 600, 606.

The prosecutor played portions of Shamsuddin's police interview for the jury.  T. at 610-612.  Shamsuddin's trial counsel objected to the prosecutor taking portions of the video out of context.  T. at 594, 596, 600, 611, 612.  The trial court overruled the objection.  *Id*. at 614.

Ultimately, the jury found Shamsuddin guilty of burglary in the second degree.  T. at 682.

### D.  Motion to Set Aside Verdict and Sentencing

On July 11, 2017, Shamsuddin filed a counseled motion to set aside the verdict pursuant to New York Criminal Procedure ("CPL") § 330.30.  SR. at 32-40.[4]  Petitioner's CPL § 330.30 motion claimed that the prosecutor's summation was improper and prejudicial in the following respects: (1) the prosecutor vouched for the credibility of his witnesses; (2) the prosecutor denigrated petitioner's counsel and petitioner; (3) the prosecutor engaged in "burden shifting;" and (4) the prosecutor misrepresented the evidence.  *Id*.

On August 24, 2017, the Albany County Court denied Shamsuddin's CPL § 330.30 motion.  SR. at 69-72.  First, the court noted that, during summation, defense counsel accused Ms. Quinde and Ms. Callaghan of lying.  *Id*. at 70, 71.  Thus, the court found that the prosecutor's comments concerning the witness' motives and credibility, "when viewed as a

---

[4]  While the State Court record includes two copies of the motion, *see* SR. at 32-40, 337-345, "Page 4" and several paragraphs of petitioner's argument is missing from both copies.

response to defense counsel's summations, [ ] did not rise to the level of reversible error." *Id*.

Second, the court held that the prosecutor did not "denigrate" petitioner's counsel or petitioner, but rather, counsel responded to defense counsel's statements related to petitioner's broken ribs and "groundwork for an inference of police brutality and a challenge to the voluntariness of the defendant's admissions." SR. at 69-72.

Third, the court found no merit to petitioner's claim that the prosecutor impermissibly shifted the burden of proof because Shamsuddin elected to take the stand in support of his defense. SR. at 71. The court concluded that the prosecutor's comment about the lack of evidence corroborating Shamsuddin's claim that wife worked in the building adjoining the hotel was "permissible rhetorical comment." *Id*.

Finally, the court found no merit to petitioner's claim that the prosecution argued facts not in evidence. SR. at 71. In that regard, the court noted that video recordings of the interior of the hotel and of petitioner's interrogation were properly admitted into evidence. *Id*. at 71-72.

On September 1, 2017, the court sentenced Shamsuddin to a determinate sentence of eleven years followed by five years post-release supervision. T. at 698.

### E. Petitioner's Direct Appeal

Shamsuddin appealed his conviction and, in a counseled brief to the Appellate Division, Third Department, asserted that: (1) the judgment was not supported by legally sufficient evidence; (2) the prosecutor made improper comments during summation; and (3) the sentence was harsh and excessive. SR. at 1-28.

On December 27, 2018, the Appellate Division found that the evidence was legally

7

sufficient to support the conviction, and that the verdict was not against the weight of the evidence. *Shamsuddin*, 167 A.D.3d at 1335.  The court concluded that there was legally sufficient evidence that petitioner entered the hotel room with the requisite intent to commit a crime. *Id*. at 1335. The Appellate Division explained, "a defendant's intent may be inferred from the circumstances of [his or her] unlawful entry, unexplained presence on the premises, and the actions and statements when confronted by police or the property owner." *Id*. at 1334.

The Appellate Division also rejected petitioner's claim that he was deprived of a fair trial as a result of comments made by the prosecutor during summation.  *Shamsuddin*, 167 A.D.3d at 1336.  The court found that the comments, related to petitioner's failure to provide corroborating evidence of his wife's employment in the building adjacent to the Hilton Hotel, "did not serve to shift the burden of proof." *Id*.

The court further noted that "remaining allegedly improper comments by the prosecutor were either sustained by County Court, constituted a fair comment on the evidence or were otherwise responsive to defense counsel's summation, questioning the credibility of the People's witnesses[.]" and found that, "[g]iven the County Court's instruction that the People maintained the burden of proof and "the overwhelming proof of defendant's guilt[,]" the prosecutor's comments "were not so prejudicial as to deny defendant his fundamental right to a fair trial[.]" *Shamsuddin*, 167 A.D.3d at 1337.  Finally, the Appellate Division found no "extraordinary circumstances" to warrant a reduction of petitioner's sentence. *Id*.

Petitioner sought leave to appeal to the New York Court of Appeals, and that application was denied on March 11, 2019.  SR. at 399.

### F. Writ of Error Coram Nobis

In December 2019, Shamsuddin filed a pro se motion for a writ of error coram nobis, contending that appellate counsel was ineffective for failing to assert on direct appeal that the trial court lacked jurisdiction and for "making poorly drafted arguments."  SR. at 400-430. The Appellate Division denied Shamsuddin's application on January 17, 2020.  *Id.* at 439. Shamsuddin sought leave to appeal the denial of his motion, and the Court of Appeals dismissed the appeal.  *Id.* at 446.

## III. PETITION

Shamsuddin contends he is entitled to federal habeas relief for the following reasons: (1) there was insufficient evidence to convict him of burglary in the second degree (Ground 1); (2) prosecutorial misconduct (Ground 2); and (3) ineffective assistance of appellate counsel (Ground 3).  Pet. at 5-8.

Respondent opposes the petition and argues that the Appellate Division reasonably rejected Shamsuddin's various claims.  Dkt. No. 9 at 12-28.

## IV. LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. §§2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 180-81, 185 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S.

465, 473 (2007).

This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).  The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508-509 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, the AEDPA foreclosed "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 567 U.S. 37 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779).  A state court's findings are not unreasonable under §2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion.  *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Schriro*,

550 U.S. at 473-74 (quoting § 2254(e)(1)).  "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015).  Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

## V.  DISCUSSION

### A.  Legal Sufficiency (Ground 1)[5]

"[T]he critical inquiry on [the] review of the sufficiency of the evidence ... [is] whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  The reviewing court must determine if, "after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (emphasis in original).

In so doing, the reviewing court must be mindful that, when "faced with a record of historical facts that supports conflicting inferences [it] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (internal quotation marks and citations omitted).  In seeking habeas corpus review, a

---

[5]  To the extent that petitioner asserts that his conviction is against the weight of the evidence, "[i]t is well-settled that claims attacking a verdict as against the weight of the evidence are not cognizable in a federal habeas proceeding." *Kimbrough v. Bradt*, 949 F.Supp.2d 341, 360 (N.D.N.Y. 2013); *see also McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 Fed. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that the verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus.") (citing cases).

petitioner who claims that the evidence was insufficient to sustain a conviction bears a 'very

heavy burden." *Fama v. Comm'r of Corr. Servs*., 235 F.3d 804, 811 (2d Cir. 2000).

As relevant here, in order to prove that petitioner was guilty of second degree burglary,

the jury was required to find, beyond a reasonable doubt, that petitioner "knowingly

enter[ed] . . . unlawfully [a dwelling] with intent to commit a crime therein." *Shamsuddin*, 167

A.D.3d at 1334 (citing Penal Law § 140.25(2)).

The Appellate Division summarized the evidence at trial as follows:

> The evidence introduced at trial established that, on August 15,
> 2016, defendant, then homeless, estranged from his spouse
> and using crack cocaine, walked into the Hilton Hotel and took
> an elevator to the fourth floor. After finding the door to room 410
> ajar, defendant entered, only to encounter a member of the
> hotel's housekeeping staff cleaning the room. After explaining
> to the housekeeper that he needed to use the bathroom, the
> housekeeper indicated that he could and left. While inside the
> room, defendant spotted a Gibson guitar belonging to the
> room's occupant, picked it up and left the hotel. Defendant
> walked to a nearby tattoo shop and sold the guitar to an
> employee for $45. Later that day, the buyer grew suspicious that
> the purchase was "too good to be true" and went to visit a friend
> who owned a guitar shop. After being advised that the
> instrument was a genuine Gibson guitar worth at least $1,500,
> the buyer contacted the police. Defendant was thereafter
> arrested.
>
> Defendant, who testified at trial, readily admits that he stole the
> guitar in question, but contends that he is not guilty of the crime
> of burglary in the second degree because his decision to steal
> the guitar was not made until after he had entered room 410.
> According to him, he entered the hotel, not with the intent to
> steal but hoping to encounter his estranged wife, who worked in
> an adjoining office building. According to defendant, he stepped
> into the elevator intending to go down, but another occupant
> had already pushed the button to go up, so he remained on the
> elevator and got off with everyone else on the fourth floor. He
> then realized he needed to use the bathroom, saw a guest room
> with an open door and asked the housekeeper in that room if he
> could use the room's bathroom; after he did, he saw the guitar

> as he was leaving and, on the spur of the moment, decided to
> steal it. According to defendant, his intent to steal formed only
> after his entry into room 410 and, therefore, he cannot be guilty
> of burglary in the second degree.

*Shamsuddin*, 167 A.D.3d at 1335.

Shamsuddin argues that this evidence does not establish that he entered the premises with the intent to commit a crime. Pet. at 5. Shamsuddin claims, "[b]oth [petitioner] and the housekeeper testified that he asked to get into the room in order to use the bathroom" and that Quinde "allowed" him to enter the room. SR. at 18; Pet. at 5.

While both statements may be true, Shamsuddin and Quine provided different accounts of the circumstances surrounding Shamsuddin's request to use the bathroom. To wit, Quine testified that petitioner approached her, claimed to be a guest in Room 410, and told her, "I just need one minute. I need to use the bathroom." T. at 344-346. Conversely, petitioner testified that he asked the maid to use the bathroom and claims she stated, "[h]urry up, I don't usually do this" and closed the door to the bathroom. *Id*. at 528. On cross-examination, petitioner testified that he "did not recall" whether he told her that Room 410 was his room. *Id*. at 541.

Upon review, this first ground for relief must be rejected. Issues of credibility and consistency were for the jury to resolve and they did so in the prosecution's favor. *See Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (a habeas court must presume that the trier of facts resolved any conflicts in favor of the prosecution, and defer to that resolution). A court reviewing a habeas petition may not revisit the fact-finder's credibility determinations. *See Marshall v. Lonberger*, 459 U.S. 422, 432–35 (1983); *Vera v. Hanslmaier*, 928 F.Supp. 278, 284 (S.D.N.Y.1996).

In this case, as in many cases, "the jury's decision was largely a matter of choosing whether to believe [petitioner's] version of the events or to believe the version offered by the State.  The jury chose to believe the State's witnesses, despite the inconsistencies in the evidence [. . .] We cannot say that no reasonable jury could have found guilt beyond a reasonable doubt on all the evidence."  *Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir.1981).

Given that there is no clear and convincing evidence presented to disturb these credibility determinations, they retain their presumption of correctness.  *See e.g., Huber v. Schriver*, 140 F.Supp.2d 265, 277 (E.D.N.Y. 2001) ("[U]nder both ... state law ... and federal law, issues of credibility, as well as the weight to be given to evidence, are questions to be determined by the jury."); *see also Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal[.]").

"[T]h[e] Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction."  *Lane v. Graham,* 9:14-CV-1261 (JKS), 2016 WL 154111, at *8 (N.D.N.Y. Jan. 12, 2016) (citing *Schlup v. Delo*, 513 U.S. 298, 330 (1995)).  While Petitioner does not deny that he stole the guitar (T. at 540), he claims that his testimony, coupled with evidence establishing that Room 410 was located "immediately adjacent to the elevator" and the lack of evidence that he had any way of knowing anything of value was in the room to steal, should be enough to cast doubt on the sufficiency of the evidence.  SR. at 18.

However, the standard asks if there is <u>any</u> evidence which is sufficient to sustain the

14

conviction. *Lane*, 2016 WL 154111, at *8. Viewing the sequence of events in the light most favorable to the prosecution, as outlined above, supports the Third Department's determination that "there was legally sufficient evidence presented from which a rational jury could infer, beyond a reasonable doubt, that defendant entered the subject hotel room with the requisite intent to commit a crime." *Shamsuddin*, 167 A.D.3d at 1335. Accordingly, petitioner's claims regarding legal sufficiency are dismissed.

### B. Prosecutorial Misconduct (Ground 2)

Shamsuddin alleges that comments made by the prosecutor during summation deprived him due process. Pet. at 7.

In order for petitioner's conviction to be overturned on the basis of prosecution's summation, the prosecution's comments must have "infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations omitted). In determining whether a defendant was denied a fair trial, the reviewing court must evaluate " 'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the [misconduct].' " *Floyd v. Meachum*, 907 F.2d at 355 (citations omitted). In an otherwise fair trial, "[a] criminal conviction 'is not to be likely overturned on the basis of a prosecutor's comments standing alone.' " *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir.1991) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)).

On direct appeal, Shamsuddin argued: (1) that the prosecutor inappropriately shifted the burden of proof; (2) the prosecutor vouched for the credibility of prosecution witnesses; (3) the prosecutor denigrated petitioner and petitioner's counsel; and (4) the prosecutor

mislead the jury with the video interrogation and improperly commented on facts.  SR. at 19-26.  In his petition, Shamsuddin advances those claims and asserts that the prosecutor also improperly "infer[red] that because appellant was a drug addict he had intent to commit a crime."  Pet. at 7.  A review of the record does not support petitioner's claims.

For instance, Shamsuddin claimed the prosecutor "shifted the burden to the defense, by attacking appellant's testimony that his wife worked at 40 State Street (the same building that contained the Hilton Hotel)."  SR. at 21.  However, after evaluating the challenged remarks in the context of the trial as a whole, it is clear that the prosecution did not shift the burden of proof.

Instead, the prosecution was simply commenting on the lack of proof presented to support the defense's theory of the case.  *See Darden*, 477 U.S. at 182 (finding no substantial prejudice, in part because "[m]uch of the objectionable content was invited by or was responsive to the opening summation of the defense") (citing *United States v. Young*, 470 U.S. 1, 13 (1985)); *O'Halloran v. Gonyea*, No. 9:11-CV-0346 (GTS/TWD), 2015 WL 93716, at *37-38 (finding the prosecutor's comments during summation were based on testimony presented during trial and were "insufficient to 'infect' the proceedings.").  The prosecution's remarks that "there is no corroborative evidence his wife was working in that building" were insufficient to "infect" the proceedings.  *Donnelly*, 416 U.S. at 643.

Shamsuddin's claim that the prosecutor improperly vouched for witness' credibility also lacks merit.  The prosecution's statements, "[d]efense attorney wants to make this about credibility" (T. at 596), "[w]hat motive does Miss Quinde have to lie" (T. at 596-597) and "[w]hy would Shana lie" (T. at 600), were a fair response to defense counsel's summation; in particular, counsel's statements that Quinde "lied" and that Callaghan "makes up this

16

elaborate, weird story, indicating how it happened." *Id*. at 585, 589, 590; *see Jones v. Annucci*, 124 F.Supp.3d 103, 126 (N.D.N.Y. 2015) ("Although the prosecutor argued that [the witness] was 'credible' and had 'testified truthfully,' a fair reading of the record indicates that those statements were properly made in response to the defense's attack on the witness's credibility.").

Similarly, the prosecutor's comments regarding Shamsuddin's drug use and credibility did not "denigrate" petitioner.  Shamsuddin had testified to his history of drug use, including smoking crack on the day of the incident and his counsel discussed petitioner's drug use during her summation.  Moreover, as the trial court noted, petitioner's counsel "characterized law enforcement's treatment of the defendant while in custody."  SR. at 70.

Thus, the prosecutor's comments about petitioner's credibility were a fair representation of the evidence and a response counsel's summation and do not justify habeas relief.  *See Brown v. Miller*, No. 14-CV-938 (LEK/CFH), 2016 WL 6081835, at *12 (N.D.N.Y. June 1, 2016) (finding the prosecutor's remarks that implied the defendant was a criminal and a drug addict were in response to defense counsel's summation) (citations omitted) *report and recommendation adopted*, 2016 WL 6072397 (N.D.N.Y. Oct. 17, 2016).

Nor is there any merit to petitioner's claim that the prosecutor improperly used the interrogation video to mislead the jury.  SR. at 24.  Prior to the commencement of the trial, the parties stipulated to the admissibility of the video.  *Id.* at 276.  Thus, the prosecutor's representations "constituted a fair comment on the evidence." *Shamsuddin*, 167 A.D.3d at 1336; *see Battease v. Chappis*, No. 9:11-CV-01072 (JKS), 2013 WL 6589566, at *15 (N.D.N.Y. Dec. 16, 2013) (rejecting the petitioner's allegation that the prosecutor's

representations of a video clip deprived the petitioner of a fair trial).

Even assuming the prosecutor's comments were improper, the trial court sustained a number of petitioner's counsel's objections.  T. at 597, 606.  Furthermore, prior to summations, the judge instructed the jury, "you are the finders of fact and it is for you, and you alone, to determine the facts," "the lawyers are not witnesses in this case[,]" "nothing the lawyers say, at any time, is evidence," "it is your own recollection, understanding, and evaluation of the evidence, however, that controls, regardless of what the lawyers have said, or will say, about the evidence."  *Id.* at 579-581.

Moreover, in closing, the judge instructed the jury that the People maintained the burden of establishing guilt beyond a reasonable doubt and, "[a]s judges of the facts you, alone, determine the truthfulness and accuracy of the testimony of each witness."  *Id.* at 638-641.  The law presumes the jury obeyed the trial court's instruction.  *Weeks v. Angelone*, 528 U.S. 225, 226 (2000).

Taken as a whole, the prosecutor's remarks fall well short of the level of egregious misconduct necessary to warrant habeas relief.  *Donnelly*, 416 U.S. at 647-48 (finding that prosecutor's "long and expectably hortatory closing argument" did not amount to the sort of "egregious misconduct . . . to amount to a denial of constitutional due process.").

Further, there is substantial certainty that the likelihood of Shamsuddin being convicted in the absence of the summation would have remained the same.  *Gilmore v. Lewin*, No. 9:05-CV-1378, 2007 WL 3274863, at *6 (N.D.N.Y. Nov. 5, 2007).  The Appellate Division's decision that "[g]iven the overwhelming proof of defendant's guilty, the cumulative effect of the challenged comments was not so prejudicial as to deny defendant his fundamental right to a fair trial, and we cannot say that the jury would not have convicted

18

defendant but for the prosecutor's comments," was neither unreasonable, nor contrary to, clearly established Supreme Court precedent.  *See Shamsuddin*, 167 A.D.3d at 1337.  Accordingly, petitioner's claims regarding prosecutorial misconduct are dismissed.

### C.  Ineffective Assistance of Appellate Counsel (Ground 3)

Shamsuddin contends his appellate counsel was ineffective in the following manner: (1) counsel failed to challenge jurisdiction; and (2) counsel presented a "poorly drafted" appellate brief that "was not well-reasoned."  Pet. at 8; SR. at 400-430.

Since the Appellate Division considered this claim and rejected it (SR. 439), it is deemed exhausted and the deferential AEDPA standard of review applies.  *Sellan v. Kuhlman*, 261 F.3d 303, 314 (2d Cir. 2001) (ineffective assistance of counsel claim deemed adjudicated on the merits where Appellate Division denied petitioner's writ of coram nobis and there was no basis to conclude that the claim was rejected on non-substantive grounds).

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the result of the proceedings would have been different, and as a result, petitioner suffered prejudice.  *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Premo v. Moore*, 562 U.S. 115, 121-22 (2011).

This standard "must be applied with scrupulous care" in habeas proceedings, because such a claim "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial] proceedings[.]"  *Premo*, 562 U.S. at 122.  "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney."  *Richter*, 562 U.S. at 110 (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and further citation omitted).

A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even assuming a petitioner can establish counsel was deficient, he still must demonstrate prejudice. *Strickland*, 466 U.S. at 693-694. This requires more than showing "the errors had some conceivable effect on the outcome," but that the counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687, 693.

Meeting this burden is "never an easy task" and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Premo*, 562 U.S. at 122 (citations and internal quotation marks omitted). When reviewing a state court's decision under section 2254, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks and citation omitted).

Federal habeas courts "must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)" because "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." *Richter*, 562 U.S. at 105. Instead, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Finally, it is "difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Richter*, 562 U.S. at 111.

20

A claim of ineffective assistance of appellate counsel is reviewed under the same standard set forth in *Strickland*. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Smith v. Murray*, 477 U.S. 527, 535-536 (1986) (Supreme Court applied *Strickland* to claim of appellate error); *Chrysler v. Guiney*, 806 F.3d 104, 117-118 (2d Cir. 2015). To satisfy the rigorous *Strickland* standard when reviewing appellate counsel's performance, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Giraldi v. Bartlett*, 27 Fed. App'x 75, 77 (2d Cir. 2001) (quoting *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000)). A petitioner must show that appellate counsel's performance was "outside the wide range of professionally competent assistance," and that there is a "reasonable probability" that, but for the deficiency in performance, the outcome of the proceeding would have been different. *Id.* (quoting *Strickland*, 466 U.S. at 690).

Shamsuddin alleges the trial court lacked jurisdiction since the complaint did not include a "sworn statement of the complainant alleging facts of an evidentiary character supporting or tending to support the charge" as required by CPL §§ 100.15 and 100.40. SR. at 422. According to petitioner, his appellate counsel was ineffective for failing to raise this argument.

Upon review, this argument must be rejected. Shamsuddin was charged and tried on the indictment returned by the Grand Jury in September 2016. SR. at 31. "[I]n New York, a grand jury indictment, not an accusatory instrument such as a complaint, forms the basis for a prosecution." *Brown v. Miller*, No. 14-CV-938 (LEK/CFH), 2016 WL 6081835, at *17 (N.D.N.Y. June 1, 2016) (citation omitted), *report and recommendation adopted*, 2016 WL 6072397 (N.D.N.Y. Oct. 17, 2016). Thus, even assuming the complaint was defective, the

21

grand jury indictment "supercedes any defect in the criminal complaint." *Cusamano v. Donelli*, No. 06 Civ. 6047, 2007 WL 7216166, at *8 (S.D.N.Y. Dec. 19, 2007) (collecting cases).  Further, "[p]etitioner's conviction by a jury transforms any defect in either the complaint or indictment into harmless error, because the conviction established proof beyond a reasonable doubt of [p]etitioner's guilt." *Id*. (citations omitted); *see also Dingle v. Scully*, No. CV 90-1804, 1990 WL 252285, at *9 (E.D.N.Y. Dec. 31, 1990); *see also Brown*, 2016 WL 6081835, at *17.

Equally important, Shamsuddin has failed to show that any alleged errors by appellate counsel prejudiced him.  As previously noted, the argument that petitioner contends should have been advanced was totally meritless.  Pursuing such claims would have been prejudicial, as well as improper, because "rais[ing] every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." *Jones*, 463 U.S. at 753.

Shamsuddin's claim that appellate counsel presented a brief that "was not well-reasoned" is similarly unavailing.  It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief.  *See, e.g., Skeete v. New York*, No. 1:03–CV–2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief.").

As such, a claim of ineffective assistance must contain specific factual contentions regarding how counsel was ineffective.  *See Hall v. Phillips*, No. 1:04–CV–1514, 2007 WL 2156656, at *13 (E.D.N.Y. July 25, 2007) (the absence of allegations that demonstrate how counsel was ineffective is "fatal to an ineffective assistance claim on habeas" review); *Hartley*

*v. Senkowski*, No. 1:09–CV–395, 1992 WL 58766, at *2 (E.D.N.Y. Mar. 18, 1992)
(considering the demanding standard to prove an ineffective assistance of counsel claim,
"petitioner's vague and conclusory allegations that counsel did not prepare for trial or object
to errors carry very little weight").

Shamsuddin's petition is completely devoid of factual support for this claim.  Counsel
filed a competent, twenty-nine page appellate brief, together with a 139-page Appendix,
asserting that petitioner's conviction was not supported by sufficient evidence, that the
prosecutor's statements violated petitioner's due process rights, and that the sentence was
harsh and excessive.  SR. at 1-28.  Counsel also sought leave to appeal to the Court of
Appeals on each issue raised on direct appeal.  *Id*. at 392.

There is nothing in the record, or THE petition, to suggest that the appellate brief filed
by counsel was deficient.  *E.g., Gonzalez v. Duncan*, No. 00–CV–1857, 2001 WL 726985, at
*6 (E.D.N.Y. June 22, 2001) (denying habeas claim alleging ineffective assistance of
appellate counsel where appellate brief reveals sound appellate strategy on part of attorney);
*Davis v. Keane*, No. 99 CV 71, 2001 WL 13288, at *6 (E.D.N.Y. Jan. 4, 2001) (same), *aff'd*,
45 Fed. App'x 31 (2d Cir. 2002).  Accordingly, petitioner's contention that counsel was
ineffective in this regard, will be denied and dismissed. *See Siriani v. Conway*, No.
07-CV-3504, 2011 WL 344758, at *2 (E.D.N.Y. Jan. 28, 2011) (denying ineffective
assistance claims where the petitioner "provide[d] no factual elaboration, affidavit, or record
cites" to support the allegation that counsel's "arguments were poorly drafted").

## VI.  <u>CONCLUSION</u>

Therefore, it is

ORDERED that

1. The petition (Dkt. No. 1) is **DENIED AND DISMISSED IN ITS ENTIRETY**;

2. A certificate of appealability shall not be issued with respect to any of the claims set forth in the petition because Shamsuddin failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2);

3. Any further request for a certificate of appealability must be addressed to the Second Circuit Court of Appeals in accordance with Rule 22(b) of the Federal Rules of Appellate Procedure; and

4. The Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  January 3, 2022
          Utica, New York.

United States District Judge

24